# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

ERIC W. DECLUE,                          )
                                         )
              Plaintiff,                 )
                                         )
       v.                                )        No. 4:14CV546 RLW
                                         )
CAROLYN W. COLVIN,                       )
Acting Commissioner of Social Security,  )
                                         )
              Defendant.                 )

## MEMORANDUM AND ORDER

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of

Defendant's final decision denying Plaintiff's applications for Disability Insurance Benefits

("DIB") under Title II of the Social Security Act and for Supplemental Security Income ("SSI")

under Title XVI of the Act. For the reasons set forth below, the Court affirms the decision of the

Commissioner.

## I. Procedural History

On February 26, 2011 Plaintiff protectively filed an application for a period of disability

and Disability Insurance Benefits. (Tr. 16, 164-170)  He protectively filed an application for

Supplemental Security Income on February 28, 2011. (Tr. 16, 171-77)  Plaintiff alleged that he

became unable to work on February 21, 2011 due to back problems. (Tr. 98, 164, 171)  The

applications were denied, and Plaintiff filed a request for a hearing before an Administrative Law

Judge ("ALJ"). (Tr. 93-95, 98-105)  On September 27, 2012, Plaintiff testified before an ALJ.

(Tr. 53-86)  On November 9, 2012, the ALJ determined that Plaintiff had not been under a

disability from February 21, 2011, through the date of the decision. (Tr. 36-48)  Plaintiff then

filed a request for review, and on January 22, 2014, the Appeals Council denied said request. (Tr. 1-3) Thus, the decision of the ALJ stands as the final decision of the Commissioner.

## II. Evidence Before the ALJ

At the September 27, 2012 hearing before the ALJ, Plaintiff was represented by counsel. Plaintiff's attorney first informed the ALJ that Plaintiff recently visited the emergency room at Missouri Baptist Hospital, and they were in the process of requesting records, including x-rays of the cervical spine. (Tr. 56-57)

The Plaintiff then testified that he lived in Sullivan, Missouri with his wife. Plaintiff only drove if he had to, but only about once a week. His wife drove during the 2 ½ hour trip to the hearing, and they stopped twice to allow Plaintiff to stretch and use the restroom. Plaintiff completed the 12th grade and attended special education classes as a freshman and sophomore. He did not presently have health insurance, and he had not worked since his alleged onset date in February 2011. Plaintiff last worked at a saw mill. He fell in an icy parking lot and hurt his lower back. Plaintiff testified that he was unable to lift anything heavy, and it killed him to walk too much. He stated he was in pain every day. He did not attempt to find other work and testified that he unsuccessfully tried to return to his prior job. (Tr. 57-61)

Plaintiff further testified that he initially saw Dr. Clarke, who administered seven injections in his lower back. A nurse practitioner performed the physical examinations. Plaintiff stated that the doctors indicated nothing more could be done for his back. Plaintiff also saw Dr. Mary Mason to receive pan medication, but he stopped seeing her due to an inability to afford the medical bills. In addition, urine tests showed that he was not taking the medication Dr. Mason prescribed. However, while Dr. Mason was treating Plaintiff, she completed a medical

2

questionnaire and indicated that Plaintiff could lift 5 pounds and lie down during the day. (Tr. 61-64)

Plaintiff stated that he could sit for 10-15 minutes but then needed to change positions frequently between lying down, standing, and sitting. He could lift 5 pounds but had chronic pain all day long. He tried to do the dishes by hand but could only stand for 10 minutes before needing to sit down. He could walk about 20-30 minutes but then had to sit or lie down. Sometimes he rode an electric cart through the store. Plaintiff's medication helped with the pain so that he could deal with it, but the medication did not completely eliminate pain. Plaintiff's medications included Vicodin for pain, blood pressure medication, and Seroquel for bipolar disorder. Plaintiff testified that Seroquel did not help, and he planned to ask his doctor, Dr. Barbin, for a different prescription. With regard to his recent visit to the ER, Plaintiff stated that he felt a sharp pain in his neck that radiated down the left side of his neck and caused numbness in his shoulder. After 2 to 3 weeks of pain, he went to the ER and was diagnosed with degenerative joint disease. Plaintiff indicated that Dr. Barbin recommended surgery. He stated that after standing and walking, he felt pain down his lower side of his hips, in his lower back, and his neck. (Tr. 64-71)

Plaintiff's attorney also asked questions regarding Plaintiff's allegations of pain. The attorney noted that Plaintiff was shifting around in his chair, and Plaintiff testified that he commonly needed to change positions. Any type of moving around or activity made the pain worse, so his wife took care of him. Vicodin helped with the pain, but it caused lightheadedness and dizziness. Hot showers also helped; however, Plaintiff could not stand for very long. Plaintiff needed to lie down for 8 hours during the day. His wife performed all of the household chores. Before he fell, Plaintiff was able to do the dishes and laundry. In addition, he could no

3

longer hunt or fish. Plaintiff did not have any children, and he did nothing outside the home such as go to restaurants or church. (Tr. 71-74)

Further, Plaintiff testified that his pain caused difficulty with focus and concentration. Plaintiff became very agitated and aggravated because it was hard to deal with life and pain at the same time. Plaintiff also stated that his bipolar disorder made him moody such that he could be nice one minute and hateful the next. He experienced these mood swings daily. He also had a hard time being around other people and stated that he had no friends. Plaintiff used a cane to walk in his house, but the cane was not prescribed by a doctor. (Tr. 74-76)

The ALJ asked the Plaintiff some follow up questions, including questions about a pending lawsuit involving the slip and fall accident. Plaintiff stated that the suit had not been resolved, and he did not have a time frame for completion. Plaintiff stated that most of the time he lay around and watched TV. He had trouble paying attention and staying focused. He did not use a computer or a smartphone. He had a cell phone but did not text. He had 2 dogs, but his wife cared for them. His wife and his nephew mowed the lawn. (Tr. 76-78)

A vocational expert ("VE") also testified at the hearing via phone. Julie Lynn Bose stated that she did not have enough information to classify Plaintiff's prior work. Plaintiff then stated that his prior jobs at a saw mill as a laborer required walking and heavy lifting of 50 to 100 pounds or more. Based on this information, the VE testified that Plaintiff's past work was at least at the medium to very heavy level and that he would be unable to perform his past relevant work. The ALJ then asked the VE to assume a hypothetical individual that was 33 years old, had a 12th grade education, worked past jobs at the medium level or more, worked at a semi-skilled level, and had no transferable skills. Further, the individual was limited to lifting up to 10 pounds occasionally and no more than 10 pounds frequently; standing and walking for about 2

4

hours in an 8-hour workday; and sitting for up to 6 hours in an 8-hour workday. The individual needed to be able to sit, stand, and move about at will; could never climb ropes, ladders, or scaffolds; and could only occasionally climb ramps, climb stairs, stoop, kneel, crouch, or crawl. In light of this hypothetical, the VE testified that the person would be unable to perform any of Plaintiff's past jobs. However, the VE named unskilled, sedentary positions that would fulfill the hypothetical, including telephone quotation clerk, circuit board assembler, and document preparer. These jobs existed in significant numbers in Missouri and in the nation. If the hypothetical individual needed to lie down outside normal breaks during the workday, he could not perform any work. The VE stated that her testimony was consistent with the Dictionary of Occupational Titles other than the sit/stand option, which she based on her own experience. (Tr. 78-83)

Plaintiff's attorney also questioned the VE and added absence from work in excess of 3 days per month to the hypothetical. In response, the VE testified that the absences would eliminate all work, based on the VE's experience. The ALJ agreed to leave the record open for 14 days to allow Plaintiff to submit recent hospital records. (Tr. 83-85)

In a Function Report – Adult dated March 11, 2011, Plaintiff stated that he spent the day laying on the couch and watching TV. His wife took care of the dogs and performed the housework. His condition affected his sleep because he could not lie still very long. Plaintiff had trouble dressing himself because it hurt to bend over. He did not cook nor do any chores or yard work. Plaintiff's wife took care of all the household duties. Plaintiff further reported that he went outside a couple times a day. He could ride in a car but was unable to drive alone because driving hurt his back. Plaintiff did not shop, and he was unable to pay bills due to his inability to work. Plaintiff previously enjoyed doing yard work and playing with his dogs. He

5

could no longer perform these activities due to pain. He talked on the phone every day and went to doctor visits regularly. Plaintiff also stated he had problems getting along with others because he was stressed over how to pay bills and eat. Plaintiff opined that his condition affected his ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, concentrate, and get along with others. He could only lift 10 pounds, and he experienced pain when walking, sitting, or standing for too long. He could walk 30 to 40 feet before needing to rest for a short time. His attention span varied according to his pain level. Plaintiff was unable to follow written or spoken instructions, and he was stressed over how he would survive. (Tr. 249-56)

In a Disability Report – Appeal, Plaintiff reported that it was becoming harder for him to stand for long periods of time. In addition, he had days when he had difficulty getting up and was unable to shower or get something to eat due to pain. (Tr. 260-67)

### III. Medical Evidence

On April 29, 2010, Plaintiff saw Mary Mason, M.D., at St. John's Clinic in Steelville, Missouri after being involved in a motor vehicle accident when he was struck from behind. He reported a brief loss of consciousness and a prior ER diagnosis of a concussion, contusion of the right ribs, and back strain. Dr. Mason noted tenderness over the lumbar spine and associated muscles. He had normal gait and posture. She prescribed Vicodin for pain. (Tr. 374-75)

On February 23, 2011, Denise Wunderler, D.O., of St. John's Clinic Rolla, examined Plaintiff for complaints of low back pain with radiation to the leg following a slip and fall accident on the ice at his wife's workplace. Dr. Wunderler noted some lumbar/paraspinals tenderness and spasm in the paraspinals. Inspection of the back was normal, and Plaintiff had good muscle tone and strength. Bilateral straight leg raise was positive, and his gait was mildly antalgic. Images of Plaintiff's thoracic and lumbar spine revealed mild spinal curve, diffuse

6

endplate changes, T11 anterior wedging, and asymmetry of the vertebral bodies. Dr. Wunderler assessed low back pain, numbness and tingling of the right leg, and bilateral sacroiliac joint pain. She discussed treatment and medication options with Plaintiff and released him to light work duty as tolerated, with no lifting over 10 pounds. (Tr. at 334-36)

On March 8, 2011, Plaintiff returned to Dr. Wunderler for a recheck of lumbar pain and to obtain the results of a lumbar MRI. The MRI demonstrated congenital shortening of pedicles throughout the spinal column; no signs of collapse or subluxation or focal stenosis; and focal area of reparative signal in facet and paraspinous muscles on the left at L4-5. Dr. Wunderler added a diagnosis of lumbar facet arthropathy and spinal stenosis/congenital short pedicles. She also noted that Plaintiff was noncompliant. Dr. Wunderler administered an injection and provided Plaintiff with back exercises. She released him to light duty as tolerated with no lifting over 10 pounds. Dr. Wunderler also noted that Plaintiff did not want to go to physical therapy because he felt it would not help him. (Tr. 340-43)

On May 12, 2011, Thomas J. Spencer, Psy.D., performed a psychological evaluation of Plaintiff to assist in determining his Medicaid eligibility. Plaintiff's chief complaint was that he fell and messed up his back and head and could no longer work or lift over 10 pounds. He described falling on ice and hitting his low back and head. He further reported events about which he had no recollection such as showering in the middle of the night and being on the porch in his underwear. Additionally, Plaintiff complained of recurrent headaches, irritability, and angry outbursts. Plaintiff noted depression but attributed it to his situation and limitations. Plaintiff spent the day sitting on the couch and watching TV or movies. He appeared to be in some pain, as he shifted frequently in his seat. Plaintiff's mental status exam was normal. Dr. Spencer diagnosed adjustment disorder, depressed; partner relational problems; occupational,

economical, and access to health care problems; and a Global Assessment Functioning ("GAF") score of 55-60.[1] Dr. Spencer opined Plaintiff had a mental illness, one that in conjunction with his health issues interfered with his ability to engage in employment suitable for his age, training, experience, and/or education. He further opined the duration of Plaintiff's disability could exceed 12 months, but with appropriate treatment and compliance, his prognosis would likely improve. (Tr. 500-504)

On May 31, 2011, Plaintiff indicated to Dr. Mason that his pain improved with medication. He was in no distress, and his mental status exam, as well as his gait and posture, were normal. (Tr. 432-33) On July 12, 2011, Dr. Mason noted that Plaintiff requested medication refills. He complained of back pain and said that was not going to change. His psychiatric exam was normal. Dr. Mason assessed low back pain, hypertension, and sacroiliac joint pain. She prescribed Percocet and Oxycodone. (Tr. 494-96)

On July 26, 2011, Plaintiff saw Scott Clarke, M.D., at St. John's Pain Management Clinic, for chronic low back pain with radiation to the lower extremities and some bowel incontinence. Plaintiff was pleasant and in no acute distress. His mood and affect were appropriate. He had midline tenderness throughout the cervical, thoracic, or lumbar regions and paraspinous tenderness in all 3 regions. Lumbar flexion and extension exacerbated his pain. Straight leg raise was positive bilaterally. Dr. Clarke and diagnosed him with lumbar radiculitis and administered an epidural steroid injection. (Tr. at 538-544) Plaintiff received additional injections from Dr. Clarke on August 9, 2011, and August 16, 2011. (Tr. 528-35)

---

[1] A GAF score of 51 to 60 indicates "moderate symptoms . . . OR moderate difficulty in social, occupational, or school functioning," *Diagnostic and Statistical Manual of Mental Disorders* (*DSM-IV-TR*) 34 (4th ed. 2000).

Plaintiff returned to Dr. Mason on September 12, 2011, with complaints of feeling depressed, becoming angry with people, having suicidal ideations, and experiencing panic attacks. He reported having problems carrying a bag of groceries due to pain radiating from his back to his left hip. He also needed to change positions frequently during the day. He also stated that he had mood swings that varied from depression, to extreme irritation. He had thoughts of hurting people and needed to get away from people to keep from acting on the thoughts. Plaintiff's physical and psychiatric exams were normal. Dr. Mason diagnosed with bipolar affective disorder, mixed; hypertension; and low back pain. She prescribed Seroquel. (Tr. 488-89)

Also on September 12, 2011, Dr. Mason prepared a Medical Source Statement – Physical setting forth Plaintiff's physical capacities. Dr. Mason opined that Plaintiff could lift and/or carry 5 pounds occasionally, and less than 5 pounds frequently; stand and/or walk 15 minutes continuously, and 3 hours in an 8-hour day; and sit for 15 minutes continuously, and 3 hours in an 8-hour day with usual breaks. Further, she opined that Plaintiff was limited in pushing and pulling with his hands if he did not use his back. However, he could never use foot controls and never climb, balance, stoop, kneel, crouch, or crawl. Dr. Mason believed that he could occasionally reach and frequently handle, finger, feel, see, speak, and hear. Plaintiff should avoid any exposure to vibration, hazards, or heights; avoid moderate exposure to extreme heat, weather, or wetness/humidity; and avoid concentrated exposure to extreme cold or dust/fumes. Dr. Mason also opined that Plaintiff needed to lie down or recline every few hours during an 8-hour workday for 20 to 30 minutes at a time. She based her opinion on Plaintiff's medical history. (Tr. 436-37)

9

Plaintiff returned to Dr. Clarke on October 4, 2011 and indicated that he had no improvement after the epidural injections. He denied lower extremity weakness or associated bowel or bladder dysfunction. Plaintiff stated that his pain occurred throughout the day and was exacerbated by almost any activity. Physical exam revealed no midline tenderness of the cervical, thoracic, or lumbar spine but tenderness over the bilateral lumbar facets. He had decreased range of motion with lumbar flexion and extension secondary to pain. Dr. Clarke assessed sacroiliac joint dysfunction; lumbar spondylosis; lumbar radiculitis; and lumbar stenosis. He recommended bilateral SI joint injections and also suggested physical therapy. (Tr. 520-21) Plaintiff received bilateral sacroiliac joint injections at L2, L3, L4, and L5 on September 22, October 11, and October 25, 2011. (Tr. at 514-519, 522-23)

On September 17, 2012, Plaintiff presented to the ER at Missouri Baptist Sullivan Hospital complaining of a 10-day history of neck pain with radiation into the left shoulder. Plaintiff was released that same day with diagnoses of cervicalgia; degenerative arthritis; hypertension, non-compliant; spinal stenosis; and long-term use of medications. A CT of the cervical spine revealed reversal of the cervical lordosis, multilevel degenerative changes, and multilevel spinal canal stenosis. (Tr. 559-63)

Jennifer Barbin, M.D., treated Plaintiff on September 24, 2012 for complaints of pain in the left side of his neck, left shoulder, left upper back, left scapula, and left interscapular area. He also reported hypertension and depression with difficulty functioning, aggravated by conflict or stress, and pain. Dr. Barbin noted Plaintiff presented with a depressed mood, fatigue, restlessness, poor insight, and poor judgment. He had moderately reduced range of motion in the cervical spine; tenderness and mild pain with motion in the thoracic and lumbar spines, as well as the left shoulder. Dr. Barbin assessed cervical stenosis of the spine, hypertension, and

10

depression. Dr. Barbin prescribed Vicodin and Robaxin for cervical spine pain; Lisinopril for hypertension; and Celexa for depression. She also recommended physical therapy, but Plaintiff failed to show up for his appointment. (Tr. 565-71)

## IV. The ALJ's Determination

In a decision dated November 9, 2012, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2011. He had not engaged in substantial gainful activity since is alleged onset date of February 21, 2011. Plaintiff had the severe impairments of lumbar facet arthropathy; spinal stenosis/congenital short pedicles; and degenerative changes and multilevel spinal canal stenosis of the cervical spine. The ALJ also found that Plaintiff's impairments of hypertension and adjustment disorder were non-severe. Specifically, the ALJ noted that Plaintiff did not allege any mental health impairments in his Disability Reports, and he had not received any mental health treatment or counseling services through a psychiatrist or psychologist. The ALJ gave Dr. Spencer's evaluation little weight because the overall evidence in the record supported a finding that Plaintiff's mental problems were not severe. The ALJ further determined that, with regard to Plaintiff's severe impairments, he did not have an impairment of combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 36-40)

After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. Plaintiff was limited to lifting 10 pounds occasionally and up to 10 pounds frequently. He could stand and/or walk for about 2 hours and sit for up to 6 hours in an 8-hour workday. Further, Plaintiff required an alternating sit/stand option at will. He could perform work that did not require climbing on ropes, ladders,

11

or scaffolds and work that required no more than occasional climbing on ramps and stairs. In addition, he could perform work that required no more than occasional stooping, kneeling, crouching, and crawling. In light of this RFC, Plaintiff was unable to perform his past relevant work. Given his younger age of 33, high school education, work experience, and RFC, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform. These jobs included telephone quote clerk, circuit board assembler, and document preparer. Thus, the ALJ concluded that Plaintiff had not been under a disability from February 21, 2011 through the date of the decision. (Tr. 40-48)

## V. Legal Standards

A claimant for social security disability benefits must demonstrate that he or she suffers from a physical or mental disability. The Social Security Act defines disability "as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

To determine whether a claimant is disabled, the Commissioner engages in a five step evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). Those steps require a claimant to show: (1) that claimant is not engaged in substantial gainful activity; (2) that he has a severe physical or mental impairment or combination of impairments which meets the duration requirement; or (3) he has an impairment which meets or exceeds one of the impairments listed in 20 C.F.R., Subpart P, Appendix 1; (4) he is unable to return to his past relevant work; and (5) his impairments prevent him from doing any other work. *Id.*

The Court must affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means less than a preponderance, but sufficient

12

evidence that a reasonable person would find adequate to support the decision." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010). "We will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because we might have reached a different conclusion had we been the initial finder of fact." *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011) (citations and internal quotations omitted). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir.2000).

To determine whether the Commissioner's final decision is supported by substantial evidence, the Court must review the administrative record as a whole and consider: (1) the credibility findings made by the ALJ; (2) the plaintiff's vocational factors; (3) the medical evidence from treating and consulting physicians; (4) the plaintiff's subjective complaints regarding exertional and non-exertional activities and impairments; (5) any corroboration by third parties of the plaintiff's impairments; and (6) the testimony of vocational experts when required which is based upon a proper hypothetical question that sets forth the plaintiff's impairment. *Johnson v. Chater*, 108 F.3d 942, 944 (8th Cir. 1997) (citations and internal quotations omitted).

The ALJ may discount a plaintiff's subjective complaints if they are inconsistent with the evidence as a whole, but the law requires the ALJ to make express credibility determinations and set forth the inconsistencies in the record. *Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995). It is not enough that the record contain inconsistencies; the ALJ must specifically demonstrate that she considered all the evidence. *Id.* at 1354.

When a plaintiff claims that the ALJ failed to properly consider subjective complaints, the duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to plaintiff's complaints under the *Polaski*[2] factors and whether the evidence so contradicts plaintiff's subjective complaints that the ALJ could discount the testimony as not credible. *Blakeman v. Astrue*, 509 F.3d 878, 879 (8th Cir. 2007) (citation omitted). If inconsistencies in the record and a lack of supporting medical evidence support the ALJ's decision, the Court will not reverse the decision simply because some evidence may support the opposite conclusion. *Marciniak*, 49 F.3d at 1354.

## VI. Discussion

Plaintiff raises two arguments in his Social Security appeal. First, Plaintiff claims that the ALJ erred by failing to consider and evaluate all of Plaintiff's impairments. Second, Plaintiff asserts that the ALJ failed to perform a proper RFC determination because the ALJ did not include all of Plaintiff's medically determinable impairments or properly evaluate opinion evidence. Defendant, on the other hand, maintains that substantial evidence supports the ALJ's RFC finding and the ALJ's decision. Upon review of the record and the parties' briefs, the Court finds that substantial evidence supports the ALJ's determination, and the Commissioner's decision will be affirmed.

---

[2]  The Eight Circuit Court of Appeals "has long required an ALJ to consider the following factors when evaluating a claimant's credibility: '(1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).

## A. The ALJ's Evaluation of Plaintiff's Impairments

Plaintiff first argues that the ALJ erred by failing to consider and evaluate all of Plaintiff's medically determinable severe and non-severe impairments. Plaintiff asserts that the medical evidence supports Plaintiff's assertion that he suffers from severe mental impairments. However, as Defendant correctly asserts, substantial evidence supports the ALJ's determination that Plaintiff's mental impairment of adjustment disorder was not severe. The ALJ noted that Plaintiff had no limitations with regard to his activities of daily living, as his functional limitations were related to physical impairment. (Tr. 40) Further, the ALJ noted that Plaintiff had mild limitations in social functioning, as he testified that he had problems getting along with others. (Tr. 40) The ALJ also found, however, that Plaintiff reported going shopping with his wife and talking on the phone daily. (Tr. 40) With regard to concentration, persistence, or pace, the ALJ noted that while pain affected his concentration, he was able to perform daily activities, drive, and take care of his needs without reminders. (Tr. 40) Additionally, the ALJ found Plaintiff had no episodes of decompensation of an extended duration, noting that Plaintiff did not need hospitalizations or extra support resulting from his mental impairments. (Tr. 40)

Further, the presence of a mild mental impairment did not support a finding that the impairment was severe. Plaintiff was able to manage his mental impairment through his primary care provider and medication. The record shows that most recently, Dr. Barbin prescribed Celexa for depression. (Tr. 566) Likewise, Dr. Spencer, a one-time examiner, indicated that, with treatment and compliance, Plaintiff's prognosis would likely improve. (Tr. 504) "An impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002) (citation omitted).

In addition, although Dr. Barbin noted a depressed mood, she also noted that Plaintiff's depression was associated with conflict and stress. (Tr. 565) Dr. Spencer indicated that Plaintiff had relational, occupational, economic, and healthcare problems that contributed to his depression. (Tr. 503-04) Further, Plaintiff did not seek counseling or any type of mental health treatment from a psychiatrist or psychologist, despite the fact that he told Dr. Mason he experienced mood problems for years but did not seek help. (Tr. 488) "The absence of any evidence of ongoing counseling or psychiatric treatment or of deterioration or change in . . . mental capabilities disfavors a finding of disability." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000) (citation omitted). Despite his alleged limitations from mental impairments, Plaintiff was able to watch TV, shop, care for his personal needs, and talk with friends on the phone. Plaintiff's failure to attend counseling, his daily activities, and the notes from his primary care physician and the consultative psychologist demonstrates that Plaintiff's depression was situational and did not result in significant functional restrictions. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039-1040 (8th Cir. 2001); *Allen v. Astrue*, No. 1:11CV106 TIA, 2013 WL 588156, at *10 (E.D. Mo. Feb. 13, 2013).

The undersigned also notes that Plaintiff did not allege depression as a basis for disability. "The fact that [he] did not allege depression in [his] application for disability is significant, even if the evidence of depression was later developed." *Dunahoo*, 241 F.3d at 1039. Further, the fact that a plaintiff was diagnosed with depression does not mean the impairments are severe. A severe impairment "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities include physical functions; capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; using judgment; responding appropriately to supervisors, co-

16

workers, and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b). As stated above, Plaintiff is able to watch TV, socialize, and grocery shop, which demonstrates that Plaintiff's medically determinable mental impairment causes no more than a mild limitation in activities of daily living; social functioning; and concentration, persistence, and pace. *See Buckner v. Astrue*, 646 F.3d 549, 555 (8th Cir. 2011) (finding plaintiff's depression was not severe where, *inter alia*, plaintiff engaged in daily activities that were inconsistent with his allegations).

In short, the ALJ properly considered Plaintiff's allegations of a severe mental impairment. Despite a diagnosis of depression and some evidence of medication for these symptoms, Plaintiff's daily activities, lack of psychological treatment, failure to allege a mental impairment in his application, management of symptoms through medication, and situational stressors impacting his mental status support the ALJ's determination that Plaintiff's mental condition was non-severe.

### B. The RFC Determination

Next, Plaintiff asserts that the ALJ failed to perform a proper RFC determination because the ALJ did not include all of Plaintiff's medically determinable impairments or properly evaluate opinion evidence. Defendant maintains that the ALJ properly considered all of Plaintiff's impairments and all of the evidence in the record to find that Plaintiff was not disabled. The undersigned agrees that substantial evidence supports the ALJ's RFC determination.

With regard to Plaintiff's residual functional capacity, "a disability claimant has the burden to establish [his] RFC." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citation omitted). The ALJ determines a claimant's RFC "'based on all the relevant evidence,

including medical records, observations of treating physicians and others, and [claimant's] own description of [his] limitations.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). RFC is defined as the most that a claimant can still do in a work setting despite that claimant's limitations. 20 C.F.R. § 404.1545(a)(1).

With regard to Dr. Mason, Plaintiff argues that the ALJ erred in failing to properly evaluate and weigh Dr. Mason's opinion. "A treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight . . . provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (citations omitted). *see also* SSR 96-2P, 1996 WL 374188 (July 2, 1996) ("Controlling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques."). The ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz v. Barnhart*, 182 F. App'x 625, 626 (8th Cir. 2006). Further, "[i]t is appropriate to give little weight to statements of opinion by a treating physician that consist of nothing more than vague, conclusory statements." *Swarnes v. Astrue*, Civ. No. 08-5025-KES, 2009 WL 454930, at *11 (D.S.D. Feb. 23, 2009) (citation omitted); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly discounted a treating physician's opinion where it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

In this case, the ALJ properly found that the opinions offered by Dr. Mason in her medical source statements were inconsistent with the medical evidence and with Dr. Mason's

18

own treatment notes. Therefore, the ALJ gave the opinions little weight. (Tr. 45) The record shows that Dr. Mason performed a brief mental status examination and noted that he had normal mood, affect, behavior, judgment, and thought content. (Tr. 489) Dr. Mason primarily monitored Plaintiff's back pain and medications, and she mentioned no work restrictions or activity limitations. *See Choate v. Barnhart*, 457 F.3d 865, 870-71 (8th Cir. 2006) (finding that ALJ properly discredited physician's Medical Source Statement where treatment notes never mentioned restrictions or limitations to the plaintiff's activities). Further, the record shows, and Plaintiff acknowledged at the hearing, that Dr. Mason completed the statement based on Plaintiff's subjective complaints. (Tr. 64)

As previously stated, the ALJ need not give controlling weight to a treating physician's opinion where the physician's treatment notes were inconsistent with the physician's RFC assessment. *Goetz*, 182 F. App'x at 626. Additionally, the ALJ may properly give little weight to an opinion that consists of vague, conclusory statements or is merely a checklist with no elaboration. *Swarnes*, 2009 WL 454930, at *11; *Wildman*, 596 F.3d at 964. Because Dr. Mason's questionnaire contained limitations far more severe than indicated in the treatment record and failed to include any medical evidence or explanation, the ALJ properly gave the opinion little weight. *Teague v. Astrue*, 638 F.3d 611, 615-16 (8th Cir. 2011) (discounting treating physicians' opinions where the form cited no clinical test results, treatment notes did not report significant limitations due to back pain, and the opinions were based on plaintiff's subjective complaints).

Likewise, the ALJ properly afforded little weight to Dr. Spencer's opinion. Dr. Spencer saw Plaintiff on only one occasion to assist in the determination of Plaintiff's Medicaid eligibility. (Tr. 500) "A single evaluation by a nontreating psychologist is generally not entitled

19

to controlling weight." *Teague,* 638 F.3d at 615 (citation omitted). Further, Dr. Spencer based his opinion on Plaintiff's subjective complaints, as the mental status exam was essentially normal with neutral affect, no thoughts of suicide, relevant flow of thought, insight and judgment intact, good memory, and a good concentration. (Tr. 502-03) The ALJ may discount a consulting psychologist's opinion where it is based on plaintiff's subjective complaints and not objective findings. *Teague*, 638 F.3d at 616. Thus, the ALJ did not err in giving the opinion of Dr. Spencer little weight.

Finally, the Plaintiff argues that, in general, the ALJ failed to account for all of Plaintiff's impairments in the RFC determination and failed to support the decision with substantial medical evidence. However, the ALJ's decision shows that the ALJ considered Plaintiff's mental impairments in the RFC assessment, noting Plaintiff's mental evaluations in conjunction with his obesity. (Tr. 44) In addition, contrary to Plaintiff's argument that the ALJ failed to rely on medical evidence in the record in determining Plaintiff's RFC, the Court finds that the ALJ's RFC assessment is supported by medical evidence contained in the record as a whole.

The ALJ need not rely entirely on a particular doctor's opinion or choose between opinions. *Martise v.Astrue*, 641 F.3d 909, 927 (8ᵗʰ Cir. 2011). Here, the ALJ properly performed an exhaustive analysis of the medical records and noted that none of the physician's treatment notes indicated serious functional restrictions. (Tr. 40-46) Indeed, Dr. Wunderler released Plaintiff to light duty work with a 10 pound lifting restriction. (Tr. 350) Further, the record shows that Plaintiff received only conservative treatment, which is inconsistent with disabling pain. *See Black v. Apfel*, 143 F.3d 383, 386 (8ᵗʰ Cir. 1998) (discrediting plaintiff's subjective complaints where she had never undergone surgery and relied on a conservative course of treatment). Despite conservative treatment, Plaintiff did not follow his treating

doctors' recommendations, and Dr. Wunderler noted that Plaintiff was noncompliant with treatment. (Tr. 343) He also failed to keep his physical therapy appointment as ordered by Dr. Barbin. (Tr. 571) Failure to follow the recommendations of plaintiff's physician weighs against the plaintiff's credibility. *Black*, 143 F.3d at 386 (citation omitted).

Here, the ALJ properly relied on the objective medical evidence, observations from physicians, and Plaintiff's testimony to determine Plaintiff's RFC. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Despite some conflicting evidence, the Court finds that the ALJ's RFC determination "does not lie outside the available zone of choice." *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007). Therefore, the undersigned finds that substantial evidence supports the ALJ's RFC determination and conclusion that Plaintiff could perform work existing in significant numbers, and the final decision of the Commissioner will be affirmed. *Martise*, 641 F.3d at 927.

Accordingly,

**IT IS HEREBY ORDERED** that the final decision of the Commissioner denying social security benefits is **AFFIRMED**. A separate Judgment in accordance with this Memorandum and Order is entered this same date.

Dated this 31st day of March, 2015.

*Ronnie L. White*

**RONNIE L. WHITE**
**UNITED STATES DISTRICT JUDGE**

21